## LAIGHTON *v.* LORD.

29 237
72 188
72 189

Any alteration of a writ to the prejudice of the rights of subsequent attaching creditors, will dissolve the attachment as against them.

The enlargement of the *ad damnum* in the writ, or the alteration of the grounds or cause of action, by increasing the same, or by inserting new causes of action by way of amendment, by the agreement of the parties to the action or the order of the court, will not dissolve the attachment made in the service of the writ, as against subsequent attaching creditors, provided the judgment taken be not for another cause of action than that contained in the writ, nor for a greater sum than that for which the party was entitled to a judgment upon his declaration at the date of the service of it.

Where a party declared for $700 for money had and received, and afterwards, at the term at which the writ was made returnable, amended his declaration, by agreement with the defendant, by inserting a count for $1,500, for money had and received, and as a substitute for the count for $700, but finally took judgment embracing no greater sum upon this ground of action than he was entitled to at the date of service; it was *held* that the amendment worked no prejudice to the rights of the subsequent attaching creditors, and furnished no ground for holding the attachment dissolved, as it respected them.

Where a defendant was defaulted, and the plaintiff through mistake and misapprehension as to his rights and without fraud, caused a judgment to be entered up for a greater sum than he was entitled to take for a judgment upon the counts in the declaration, as it stood at the commencement of the action, and purchased out a writ of execution, and placed it in the hands of an officer for levy and satisfaction upon the goods attached ; it was *held* that he might properly return the execution, and was entitled to have judgment entered for such sum as he was entitled to recover in the action as it originally stood, and to have an execution therefor, and that the court in which the judgment was rendered would not thereby be authorized to amend the record by entering up a judgment for the erroneous sum for which it was originally entered, upon the motion or petition of subsequently attaching creditors.

THE petition in this case was filed at the September term, 1852, of the court of common pleas for this county, and was as follows :

" William J. Laighton of Portsmouth, in said county, trader, respectfully represents that on the 23d day of January last, Augustus Lord of said Portsmouth, merchant, sued out of this court his writ of attachment against one John Kinnear of New Castle, in said county, shoe manu-

facturer, in which writ said Lord laid his damages upon the causes of action therein set forth, at $2,000.  And afterwards, on the same day, your petitioner sued out a writ against said Kinnear, to secure a large debt due from said Kinnear to him, and the goods and estate of said Kinnear, which had been attached upon said Lord's said writ, were thereupon attached upon your petitioner's writ, and both of said actions were entered in this court, at the last term thereof, and were defaulted, and the said Lord, by a written agreement with said Kinnear, but without the knowledge of your petitioner, then and there amended his said writ, first by inserting in the second count in his declaration the words " fifteen hundred dollars," instead of the words " seven hundred dollars," the words then standing in said declaration, and by increasing the *ad damnum* in said writ from two thousand dollars to two thousand eight hundred dollars, and afterwards by increasing, under a like written agreement, the *ad damnum* of said writ to twenty-nine hundred dollars, and by increasing the demand in his said writ to two thousand nine hundred dollars.

And the said Lord thereupon caused judgment to be entered in his said action in his own favor for the sum of two thousand seven hundred and sixty-four dollars and ninety-two cents, with costs taxed at thirty-five dollars and seventy-eight cents, and within thirty days took out execution therefor, and placed the same in the hands of George W. Towle, Esq., the deputy of the sheriff by whom the said goods and estate of said Kinnear were originally attached, and thereupon the petitioner took out execution upon the judgment in his said action, and placed the same in the hands of said Towle for service.  And afterwards, without the knowledge or consent of this petitioner or of said Kinnear, as this petitioner believes, said Lord withdrew his said execution from the hands of said Towle and returned the same to the clerk of this court, and caused the same to be destroyed or concealed, and out of term time and without

leave of court, falsely and fraudulently, and with intent to injure and defraud your petitioner, caused the entry of said judgment upon the records of this court to be altered and erased, and a new, false and pretended judgment for the sum of one thousand nine hundred and fifty-nine dollars and eighty-four cents, and costs as aforesaid, and on or about the 20th of March took out an execution thereon, and placed the same in the hands of the said Towle for service. Whereby and by the existence of said false and pretended judgment upon the records of this court, your petitioner is in danger of being injured and defrauded, and his attachment of the goods and estate of said Kinnear is in danger of being lost or defeated. Wherefore he prays your honors that the records of said court may be amended according to the facts and the truth, and that said false and pretended judgment, and all executions and process issued thereon, may be declared void, and that justice may be done in the premises."

At said September term an order was made that notice of the pendency thereof be given to said Augustus Lord, and the petition was continued from term to term until the February term of said court in 1854, when said Lord appeared by his attorney, and filed the following motion to the court:—

" The said Augustus Lord moves the court, when the action referred to in said Laighton's petition is brought forward, so to amend said judgment in the action Lord *v.* Kinnear, as to correct any error therein, if any there be, so as to save said Lord's attachment."

The following evidence was submitted to the court by the petitioner, in support of the prayer of the petition, to wit:

1. The deposition of George W. Towle, in which he stated the following facts, viz:

That in March, 1852, he was acting as deputy sheriff of Rockingham county, and has been since and is now; that as deputy sheriff he served the original writs, issued out of

the court of common pleas in Rockingham county, in favor of Augustus Lord against John Kinnear, and in favor of William J. Laighton against John Kinnear; that executions in said actions were placed in his hands for collection.

One, Augustus Lord *v.* John Kinnear, was placed in his hands by Mr. Hackett, about the middle of March, 1852, and two, within a few days after that, by Mr. Hatch, in favor of William J. Laighton *v.* John Kinnear.

The amount of the execution of Lord *v.* Kinnear was for between $2,700 and $2,800 debt, and for about $90 to $100 costs. It remained in his hands a day or two, and then was taken once by Mr. Hackett, then returned to him, and shortly afterwards taken again. He never saw it afterwards.

Instructions were given him by Mr. Hackett to satisfy the judgment out of property which was in his hands. In regard to satisfying it, he told Mr. Hackett he could not do it out of the property in his hands, as he only attached $2,000 in the original writ, and he could not go beyond that, as there were subsequent attaching creditors. He thought the execution was for very much more than he was ordered to attach on the original writ. Mr. Hackett's answer was that the execution was all right; that the writ had been amended by leave of court, by increasing the *ad damnum* of the writ. Subsequent to this conversation the execution was finally taken from his hands.

The execution was withdrawn from him finally after the execution in favor of Laighton was placed in his hands for service.

There was another execution, Lord *v.* Kinnear, placed in his hands pretty soon after Laighton's came into them; the amount of the debt was a little short of $2,000; the costs the same as on the first execution.

The Mr. Hackett above rererred to is W. H. Y. Hackett, Esq.

2. A copy of so much of the writ in the action Lord *v.*

Laighton *v.* Lord.

Kinnear as is material, together with a copy of the memorandum on the back thereof, of the amount of debt and costs, certified by the clerk of the court of common pleas, was given in evidence, and is as follows:

" The State of New Hampshire, Rockingham, ss:

[L. s.]   To the sheriff of any county in this State, or his deputy.

We command you to attach the goods or estate of John Kinnear of New Castle, in said county, shoe manufacturer, to the value of two thousand dollars, and summon him, (if to be found in your precinct) to appear before the justices of the court of common pleas, to be holden at Exeter, in said county of Rockingham, on the second Tuesday of February next, to answer to Augustus Lord of Portsmouth, in said county, merchant, in a plea of the case, for that the said Kinnear, at said Exeter, on the day of the date hereof, being indebted to the plaintiff in the sum of fifteen hundred dollars, it being the balance of the plaintiff's account against said Kinnear for flour, goods, wares and merchandize, by him before this date, sold and delivered to the defendant, and at his request, and then and there, in consideration thereof, promised to pay the plaintiff the same sum on demand.

Also, in a plea of the case, for that the said defendant, at said Exeter, on the day of the date of this writ, being indebted to the plaintiff in the sum of seven hundred dollars, for so much money by the defendant before that time had and received by the said defendant to the plaintiff's use; in consideration thereof then and there promised the plaintiff to pay him that sum on demand."

" *Augustus Lord* v. *John Kinnear.*

February term, 1852.   Plaintiff's costs.

Writ,..............................$1,00
Service,..............................91,33

Laighton *v.* Lord.

Entry,............................... 1,20
Travel,............................... 1,00
Attendance, ........................ 1,25
                                        ─────
                                        95,78

Debt,........................$2,764,92

Augustus Lord, by
W. H. Y. Hackett, his attorney."

3.    The petitioner also gave in evidence copies of agreements filed in said action, Lord *v.* Kinnear, certified by the clerk, which were as follows, viz :

1.    " STATE OF NEW HAMPSHIRE.—ROCKINGHAM, ss.
Court of Common Pleas, February Term, 1852.
*Augustus Lord* v. *John Kinnear.*

The parties hereby agree that the plaintiff may amend the second count in his declaration in the above entitled action, by inserting fifteen hundred dollars instead of seven hundred dollars, the sum now inserted in said count. And that the plaintiff may amend the said demand in said writ by adding next after the words 'two thousand,' the words 'eight hundred,' before the word 'dollars,' so that the said demand shall read, 'two thousand eight hundred dollars.'

AUGUSTUS LORD,
JOHN KINNEAR.

A true copy, attest—

I. B. HOITT, *Clerk.*"

2.    " STATE OF NEW HAMPSHIRE.—ROCKINGHAM, ss,
Court of Common Pleas, February Term, 1852,
*Augustus Lord* v. *John Kinnear.*

The parties hereby agree that the plaintiff may amend the second count in his declaration in the above entitled action, by inserting fifteen hundred dollars instead of seven

hundred dollars, the sum now inserted in said count. And that the plaintiff may amend the *ad damnum* in said writ by adding next after the words ' two thousand,' the words ' eight hundred,' before the word ' dollars,' so that the *ad damnum* will read ' two thousand eight hundred dollars.'

Augustus Lord,<br>John Kinnear.

A true copy, attest—

I. B. Hoitt, *Clerk*."

3. " State of New Hampshire.—Rockingham, ss.

February Term, Court of Common Pleas, 1852.

*Augustus Lord v. John Kinnear.*

The parties agree that the plaintiff may amend his account by inserting after the words ' to the damage of, as he says, two thousand,' the words ' nine hundred,' before the word ' dollars,' so that the *ad damnum* will be two thousand nine hundred dollars.

John Kinnear,<br>W. H. Y. Hackett, Plf's Att'y."

" Rockingham, ss. Court of Common Pleas,

February Term, 1852.

*Augustus Lord v. John Kinnear,* by increasing the *ad damnum* to two thousand nine hundred dollars, and by inserting the words ' nine hundred ' after the words ' to the damage of the said plaintiff, as he says, the sum of two thousand,' and before the word ' dollars.'

W. H. Y. Hackett, Plf's Att'y.

A true copy, attest—

I. B. Hoitt, *Clerk*."

4. The original writ filed in said action, corresponding with said certified copy, was given in evidence, together with a memorandum on the back thereof, of the costs and

debt, in said action, the indorsement and memorandum on said writ being as follows:

"*Augustus Lord* v. *John Kinnear.*

| | |
|---|---|
| Writ,.................................. | $1,00 |
| Service,.............................. | 91,33 |
| Entry,................................ | 1,20 |
| Travel,............................... | 1,00 |
| Attendance, .......................... | 1,25 |
| | $95,78 |

Debt,...............................$1959,84 "

The appearance of said figures $1959,84 clearly indicated that an alteration had been made therein, some other figures having been first written in their place and the alteration made partly by erasure and partly by writing figures as they now stand over those first written, and the right hand figure having been apparently written originally 2, and altered to a 4, and the next figure towards the left having been apparently written originally 7 or 9, and altered to an 8, and the alteration of the other figures being so made as render it doubtful what those figures were, as originally written.

5.    The docket of the court of the February term, 1852, was put in evidence, in which are the following entries, under this action :

"597.        *Augustus Lord* v. *John Kinnear.*
                Hackett.
            Default.  Judgment for debt,..... $1959,84
            Costs, ........................    95,78
    Execution, March 17, 1852."

The appearance of the paper at the place where said figures, $1959,84, are written, clearly indicated that other fig-

ures had been previously written at that place and erased by abrasion of the paper.

Evidence was produced to the court shewing that the petitioner caused the property attached on the writ *Lord* v. *Kinnear*, to be attached on a writ in favor of the petitioner *v.* said Kinnear, subject to the attachment in Lord's suit, and prosecuted said suit to judgment and execution, against said Kinnear.

William H. Y. Hackett, counsel for Lord, testified that he had no conversation, to his recollection, with George W. Towle, deputy sheriff, in regard to the levy of the execution *Augustus Lord* v. *John Kinnear*, until after said execution had been recalled by the clerk of the court, corrected by him, returned to Hackett and again handed to Mr. Towle. He had a distinct recollection of two conversations which he had with him after that time, and had no doubt that he should as distinctly have recollected any other conversation upon that subject, if any had occurred. The execution was not in Towle's hands but a short time, perhaps one day, before the clerk sent for it.

He further testified that in accordance with the request of the clerk, the execution was immediately taken from Mr. Towle by himself or his son, William H. Hackett, and sent to the clerk to be corrected. The execution was corrected by the clerk and returned the same day, and by said Wm. H. Hackett immediately placed in the hands of Mr. Towle.

A letter from I. B. Hoitt, clerk of the court of common pleas, was put in evidence, of which the following is a copy:

" *Exeter, March* 20*th*, 1852.

Mr. Hackett—I have had my attention called to the writ and amendments in the case, *Lord* v. *Kinnear*, and am of the opinion that it involves some difficulties which would, if I had perceived them, prevented my returning the execution ; but I did not notice the matter as I ought, until afterwards. The execution had better be returned until I can consult at

least one member of the court upon the subject. My opinion is that you cannot have judgment for more than the *ad damnum* in the writ; and I should not have issued the execution if I had known all the facts. I have made no judgment yet."

Subsequently to the return day of said execution of *Lord* v. *Kinnear*, Lord brought an action against Nathan H. Leavitt, then sheriff of the county of Rockingham, founded upon the following alleged cause of action, viz: that on the 21st day of March, 1852, he delivered to said George W. Towle, then and ever since, and now a deputy of the defendant, an execution in the name and favor of the plaintiff, on a judgment recovered February term, 1852, of the court of common pleas, against one John Kinnear, for $1959,84 debt, and costs taxed at $95,78, to be executed and returned at the next term of that court, according to law, the said Towle having served the original writ upon which said judgment and execution was founded, and having attached and returned upon said writ sufficient personal property to pay and discharge said execution : that said execution was delivered to said Towle within thirty days after the rising of the court in which said judgment was recovered, and that said Towle had not returned said execution or paid over the amount of it, or any part thereof.

Said action was committed to a commissioner, appointed under the act of January 7th, 1853, whose report was made a part of this case by the order of the court below, transferring this case for the consideration of this court, by which report the following facts appear, viz :

On the twenty-third day of January, 1852, Augustus Lord commenced an action against John Kinnear, and caused said Kinnear's property to be attached upon the writ. The writ directed the sheriff to attach Kinnear's property to the amount of $2000. There were two counts in the declaration ; the first for $1500, it being the balance

of the plaintiff's account against the said Kinnear for flour, goods, wares and merchandize by him before that date sold, &c.   The second for $700, money had and received by the defendant to the plaintiff's use.   The *ad damnum* was $2000.   About the same time, William J. Laighton commenced two actions against said Kinnear, and caused the same property attached upon the writ of Lord against Kinnear to be attached upon his writs, subject to the attachment of said Lord.   All of said actions were duly entered at the court of common pleas, February term, 1852.   Wm. H. Y. Hackett, Esq., was counsel for said Lord.   A. R. Hatch, Esq., was counsel for said Laighton.   During that term of said court Mr. Hatch informed Mr. Hackett that he was counsel for Laighton, and was instructed to examine the claims of Lord against Kinnear, and that duty he must perform by entering an appearance for subsequent attaching creditors, or by an arrangement with Mr. Hackett.   Mr. Hackett told Mr. Hatch that he might have the same security of Lord's claims as he would have if he entered an appearance, and it was so arranged ; and it was arranged between the counsel that if Mr. Hatch saw anything he wished to contest, if the objection could not be removed by Mr. Hackett, the action was to be continued.

Mr. Hackett found, upon examining the plaintiff's claims, that they were several hundred dollars greater than the *ad damnum* in Lord's writ against Kinnear.   He afterwards saw Lord and Kinnear, and was satisfied that Lord intended, when he sued out his writ, to cover his whole claims against Kinnear, and accordingly drew amendments of the writ, which were signed by Lord and Kinnear.   Mr. Hackett then taxed up the costs and figured up the plaintiff's claims upon the back of the writ, and put all the papers into the hands of Mr. Hatch.   There was a meeting of Lord, Laighton, Hackett and Hatch, at which Lord offered to assign to Laighton his debt, and let him take the management of it.   Mr. Hatch asked Mr. Hackett if he sup-

posed the amendments would be available so as to cover beyond $2000. Mr. Hackett replied, he supposed there was no doubt of it, at the same time explaining the circumstances. Mr. Hatch retained the papers about a fortnight, and between the 13th and 18th of March, 1852, carried the papers to Mr. Hackett, and said he saw no advantage to Laighton in taking an assignment of Lord's claim, and that Mr. Hackett must take out his execution. Mr. Hackett immediately sent the papers to the clerk of the court, and received, soon after, an execution in favor of Lord against Kinnear, which was immediately put into deputy sheriff Towle's hands for collection, which execution was for $2,764,92 debts and $95,78 costs of suit.

In the actions of Laighton against Kinnear, judgments were rendered at the February term of this court, 1852, and executions taken out, bearing date the 18th day of March, 1852; one was for $1,030,42 debt, and $72,93 costs; the other was for $243,13 debt, and $12,58 costs. As soon as the executions were received by Mr. Hatch, he called upon Mr. Towle to ascertain if he had any execution against Kinnear, and Mr. Towle showed to him the execution of Lord against Kinnear, above named. Mr. Hatch then stated to Towle that he objected to Towle's levying Lord's execution upon any of the property which was attached on Laighton's writs, and gave to Towle, Laighton's execution against Kinnear, and directed him to levy them on property attached on Laighton's writs, and promised him that Laighton would see him harmless for so doing. The next day after Mr. Hackett had received and put into Towle's hands the execution of Lord against Kinnear, above named, he received from I. B. Hoitt, Esq., then the clerk of this court, a letter, a copy of which is always given in this case. Mr. Hackett immediately took from Mr. Towle's hands the execution of Lord against Kinnear above named, sent the same to Mr. Hoitt, and received from him another execution in favor of Lord against Kinnear, dated March 17th, 1852, for

Laighton v. Lord.

$1,959,84 debt, and $95,78 costs, which was immediately put into the hands of Mr. Towle, with directions to levy the same upon the property attached upon Lord's writ against Kinnear. Towle has declined to so levy said execution, or to pay over any money, though repeatedly requested so to do, and full indemnity offered. Mr. Hatch, immediately after he put into Mr. Towle's hands the execution of Laighton against Kinnear, wrote to clerk Hoitt for copies of the papers and judgment, Lord against Kinnear, and received from him a copy of the writ with the figures upon the back, which copy is annexed hereto, and copies of the agreements for the amendments thereof, which are numbered Nos. 1, 2, and 3, and are hereto annexed. (These copies are the same already set forth in the statement of this case.

The property attached upon said writs was sold by agreement of parties, by said Towle, and the amount of such sale, after deducting the expenses was $2,608,03. Part of this amount, namely the sum of $1,307,50 said Towle, on March 19, 1852, levied upon, and applied the same to the discharge of the two executions of Laighton against Kinnear. Kinnear is reported to be without property now. About the same time that the property of the said Kinnear was attached upon the writs in favor of said Lord and said Laighton, the same property was attached upon writs issued in suits in favor of the following named persons, to wit: Daniel Bailey, Thomas Curtis, Elerson O. Curtis, Franklin W. Neal, J. Woodman Moses and Thomas Tredick, upon claims amounting in the whole to the sum of $1,960,80, subject to the said attachments of said Lord and said Laighton, which suits were duly entered in the court of common pleas and are now pending therein.

From the papers in the case of Lord against Kinnear, including a copy of judgment in said case, duly certified by I. B. Hoitt, Esq., as clerk of said court, it appears that at the February term of said court, A. D. 1852, judgment was

entered up in favor of Lord against Kinnear for $1,959,84 debt, and costs of suit taxed at $95,78. The facts in relation to the same are as above stated.

*A. R. Hatch*, for the petitioner.

1. The court of common pleas have sent up matter to this court for their consideration not belonging to this case.

2. A judgment was regularly entered up, as appears by the facts reported, and was afterwards altered by the procurement of the petitionee, which was to the prejudice of the petitioner, and, therefore, could not properly be done. It was done, too, by the clerk.

3. The alteration could not properly have been made, even by the court, under the circumstances of this case.

4. The motion of the petitionee for leave to amend the record, is a confession that the record is false, and if it be so, it should clearly be corrected.

*W. H. Y. Hackett*, for the petitionee.

The first point the petitioner takes is that the court below has sent up matter which does not belong to this case, but as no motion is made, it does not require an answer.

In his second position, he maintains that a judgment was regularly entered, and then altered, to his prejudice. My answer to this position is, that the clerk, when he recalled the defendant's execution, said to his attorney, " I have made no judgment yet." It may have been that the clerk had made a memorandum, upon his waste docket, of the amount of the first execution. May not the clerk correct his own errors? Be this as it may, we are not responsible for his conduct, and ought not to suffer from *his* errors. But as the petitioner is now attempting to deprive the defendant of $2,000, " for falsely and fraudulently " causing the records of the court to be altered, he has a right to ask the court to look at his conduct from the point of view presented

Laighton v. Lord.

to him by the clerk's letter to his counsel. That the court, in determining whether the defendant has committed any wrong, will regard the facts as stated by the clerk as true. The clerk requested the defendant's counsel to return the execution, because it had been inadvertently issued, and before judgment was made up. He returned it, because he could not rightfully retain it. He had no choice in the matter. He placed in the hands of the clerk a paper which the clerk had inadvertently issued. For the convenience of the court, I will recapitulate the facts in this case. The defendant, Lord, in a hurry, went to his attorney for a writ of attachment against Kinnear. His claim consisted of various notes and an account, neither of which did he have with him. He estimated his loss at less than $2,000. The writ and attachment were made. When the court convened, and his claims were examined, they were found to amount to more than $2,700. The petitioner was the next attaching creditor, and it was agreed that he should have the same rights in Lord's case against Kinnear, as if he had entered his appearance as subsequent attaching creditor, and filed his bond. Kinnear was willing that the defendant should correct the error in his writ, and signed an agreement to that effect. The writ, notes, account, and agreement to amend, and the amendment drawn in accordance with said agreement, in pursuance of an agreement between the parties, were placed in the hands of the attorney for the petitioner, for the purpose of being examined and objected to, if there were any cause, or of being purchased by the petitioner, if he so elected. The petitioner's suit and the defendant's suit against Kinnear were both defaulted, with an agreement that if the petitioner saw any cause to object to the defendant's claim which could not be obviated, that both cases should be continued. A few days before the attachment would have been dissolved, the attorney for the petitioner returned the defendant's writ, &c., and told him he might take out execution. The papers were immedi-

ately sent to the clerk, and an execution returned. A few hours afterwards the defendant's attorney was requested to return the execution to the clerk, because it had been inadvertently issued, and because there was no judgment made up. Whatever might have been the opinion of the defendant as to his legal rights, he had no doubt that he must return the execution, and he instantly acted upon this conviction. So far from interfering with the records, which neither he nor his counsel ever saw or made a suggestion about, he yielded $700 of what he considered his legal right, to save the attachment for the balance of his debt. He was compelled to do this by the clerk, and supposed that he was yielding to a wrong, and not committing one. If the defendant has been guilty of any fraud in this manner, he should not complain if in addition to $700, most of which has already inured to the benefit of the petitioner, he loses the balance of his debt, $2,000; but unless he has committed a fraud, the court will protect him. *Felton* v. *Wardsworth*, 7 Cush. 587.

The next position of the petitioner is that the alteration could not lawfully be made, even by the court. Without stopping to remark upon the obvious difference between an alteration of the record by the clerk, and the correcting his own error, occurring in the process of making up the record, I deem it sufficient to say that this court will not punish a suitor for the errors of its clerk.

His next position is, that the motion of the defendant to amend is a confession that the record is false. The motion confesses nothing. It is based upon the idea that the court will shield honest suitors from the effects of the errors of its subordinate officers, and that if there be any thing, in his judgment, calling for the interposition of the court, they will, in correcting the errors of the clerk, protect the defendant. That they may order the action brought forward, and enter a judgment for the full amount of the defendant's debt, and thereby correct what we say is an error of the clerk,

or if the clerk has committed any other error, they will correct it and save the defendant's attachment. *Hackett* v. *Pickering*, 5 N. H. Rep. 19.

I claim that the amendment of the *ad damnum* in Lord's writ against Kinnear, in no wise concerned the petitioner. That whether Lord could or not levy upon a greater amount of Kinnear's property than was covered by his writ when the petitioner made his attachment, does not in any wise affect the right of Lord and Kinnear to agree to an honest amendment of Lord's writ. If it were done for a fraudulent purpose it would be a release of Lord's attachment, but there is no pretence that any wrong was intended.

If Laighton, as subsequent attaching creditor, had acquired rights which precluded Lord's amending his writ, without Laighton's consent, I contend that his conduct in this matter amounts to a waiver of all objections to this amendment.

Nothing has been done behind Laighton's back. He saw, examined, scrutinized, and talked of purchasing Lord's claim, and saw and talked over the amendment. Now I say that Laighton cannot come into court, and take the position of a subsequent attaching creditor, contesting Lord's claim, and have possession of all Lord's papers for the express purpose of seeing if there be any thing to object to, and if he will purchase Lord's rights, and then by implication say to Lord, "This is all right, I waive all objections," by saying "you must take out your execution," and then use defects which he thus discovered and had waived, to overthrow a judgment to which he had assented. If Lord's judgment were for $2,762,92, this view would answer Laighton's petition. How is he defrauded by Lord's taking a judgment for more than $700 less than he has admitted Lord was rightfully entitled to?

Our complaint against the clerk is that he would not recognize the amendment as properly made, and Laighton's complaint against Lord is, that the clerk recalled an execu-

tion which had been inadvertently issued. Lord has lost $700 of his debt because the clerk committed a blunder; Laighton insists that he shall lose $2,000 more because he attempted to correct it. The substance of the petitioner's complaint is, that while occupying the position of subsequent attaching creditor, contesting Lord's right to recover against Kinnear, he discovered what he deemed a fatal error in Lord's proceedings, which error, if it were one, was corrected by the clerk.

My answer is that this is not good ground of complaint, and if it were the petitioner has waived it.

The defendant insists upon it that he shall not be held responsible for the conduct of the clerk. He obeyed him, and now claims that this court shall restore him to his rights, which the clerk, by recalling the execution for his debt and cost, has suspended. And he further claims that if the clerk has done or omitted anything which has endangered or interfered with his just rights and legal remedies, or if his counsel has committed any error, that this court will protect him.

Woods, J. This was an application to the court of common pleas of this county, for the correction of an alleged error in its records. It is alleged that it is an error effected by the fraud of the defendant, injuriously affecting the rights of the petitioner. We need not stop to inquire, in this case, whether if there be such error in the record as the petitioner alleges, it is a case requiring the favorable exercise of the discretion of the common pleas, in order to protect his rights, or whether he may not safely be left to pursue his remedies by an impeachment of the judgment of *Lord* v. *Kinnear*, collaterally, it being a judgment to which the plaintiff is not a party. There is a motion by the defendant as well as by the petitioner, for an amendment, if the justice of the case demands it. The exercise of the discretion of the court, in making a proper amendment, is invoked

by both parties. No doubt exists of the power of the court, to amend its own records, where an error has arisen from the omission or misprision of an officer of the court, and it has been decided that it is indifferent whether that officer be the clerk or an attorney of the court. *Close* v. *Gillespy* 3 Johns. 526.

Aside from all technical questions, we propose looking into the facts of this case, to learn whether it is one calling upon the common pleas to interpose an exercise of its power in the correction of the record, for the advancement of the ends of justice in the case in question. There would seem to be no doubt that the defendant, Lord, had a just claim against Kinnear for a greater amount than that for which judgment was finally taken, and that he brought an action for the recovery thereof, intending to cover his whole claim; but that through some mistake or misapprehension at the time, as to its amount, the counts in his declaration were insufficient to embrace the whole of it, and the *ad damnum* stated in the writ was not equal to it in amount.

At the term of the court when the action was entered, upon discovery of these facts, and to enable Lord to obtain a proper and valid judgment against Kinnear for the whole amount due him, Lord and Kinnear entered into an agreement for an amendment of the writ and declaration, by the increase of the *ad damnum* from $2,000 to the sum of $2,900, and by inserting a count in the writ for $1,500, for money had and received, instead of $700, as it stood originally in the declaration.

According to the admissions in the written agreement, amendments were drawn in conformity with the agreement of the parties. The finding of the commissioner, in the report sent up to us, shows only that amendments were drawn which were signed by Lord and Kinnear. And it is apparent that the writings thus signed were only agreements for amendments, but not amendments in fact. And the letter of the clerk shows that there was no amendment, in fact,

made, of the *ad damnum*, enlarging it, and so does the copy of the original writ filed in the case. We learn from the case, therefore, that the only amendment in fact made was that by the insertion of the new count for money had and received in the declaration. But if it be proper to take the admissions of counsel in argument, instead of the facts reported in the case to be true, we think it will not vary the result.

As between the parties to the judgment, it cannot be doubted that it was both competent and proper to make all the agreements and amendments stated and found by the case. An enlargement of the cause of action set forth in the declaration, or of the *ad damnum* in the writ, would constitute no vice or error in the record, of which either party to the record and the agreements could in any event avail himself. But Laighton, the party who complains of the alleged wrong of Lord, and asks the aid of the court, was no party to the agreements of Lord and Kinnear. And the agreements and amendments had the effect, if carried out, to enlarge the claims of Lord, embraced in his suit, by the introduction of a new cause of action into it, for which he had no right of recovery, as his action originally stood in court. And it was intended to cover claims accidentally, but nevertheless, in fact, omitted to be inserted in the suit at its commencement. The goods and estate of Kinnear were attached in the action of Lord against him, and also, subsequently, in another action in favor of the petitioner against Kinnear, and subject to Lord's prior attachment. This order of attachment gave to Lord a priority of right over Laighton to the goods attached, to the amount of the damages justly due him, upon the claims embraced in his writ and the costs of the action, and no more. Moreover, as against Laighton and any other subsequent attaching creditor, he had a further right to make any amendment not inconsistent with his original cause of action, and not changing or enlarging it.

But Lord had no right to change or enlarge his grounds of action, to the prejudice of subsequent attaching creditors. This is well settled. Any such amendment to the prejudice of the rights of such creditors, will operate to dissolve the attachment of the prior creditor as against them, and in that way furnish the remedy for the wrong done. So also it will discharge bail. *Bean* v. *Parker & a.*, 17 Mass. Rep. 591. In *Willis* v. *Crooker*, 1 Pick. 204, 5, 6, it is said by the court that " after an attachment or holding to bail, the plaintiff cannot alter his writ to the injury of a subsequently attaching creditor or bail. The subsequently attaching creditor has a vested right to the excess beyond the amount of the judgment to be rendered upon the writ of the first attaching creditor, as it was when served. So bail are not to be made liable for a greater sum than was included in the writ, at the time when they entered into the bail bond." And we find the doctrine there stated to be in accordance with the well settled rule upon this subject. *Adams Bank* v. *Anthony*, 18 Pick. 238.

But an amendment changing the form of the action or substituting or adding a new count, will not discharge bail, nor the bailee of goods attached, from his responsibility, provided the action be still for the same demand. *Miller* v. *Clark & a.*, 8 Pick. 412; *Ball* v. *Clafflin*, 5 Pick. 303; *Wright* v. *Brownell*, 3 Vermont Rep. 435. The obligation of bail and receipters is to be regarded as entered into with a full understanding of the existence of the right, on the part of plaintiffs, to amend, and of the power and duty of the court to allow the exercise of that right in all proper cases. And it is clear that neither bail nor bailees of property attached nor subsequent attaching creditors have any right, in law or justice, to complain, when the amendment made does not, in fact, prejudice their rights by increasing the responsibility of bail or receipters, or tend to diminish the surplus property to which such subsequent attaching

creditor may be entitled, according to the conditions of the action, at the time of the service of the writ.

In *Seely* v. *Brown*, 14 Pick. 177, it was decided that an amendment of a declaration embracing a new demand will not discharge bail, provided the judgment in the action be rendered only on the demand originally embraced in it. In that action the exact ground upon which the defendant rested his defence was, that the amendment allowed by the court introduced into the declaration a new and additional ground of action. The court there say : " Now if the amendment might embrace a new demand, yet, as judgment was rendered on the original demand only, the bail are not liable but to that extent, and cannot, therefore, be injured by the amendment. To hold the bail discharged, under these circumstances, would be going quite too far, and beyond any of the decisions cited by the defendant's counsel, which have gone far enough in limiting the privilege of amendment, and ought not to be extended." It was further remarked that, " in *Hill* v. *Hunnewell*, 1 Pick. 192, it was decided that in an action where an attachment had been made, and that action and all demands had been referred to arbitration, and judgment had been thereon recovered, the mere fact of entering into such a reference dissolved the attachment, and that it would likewise discharge bail, for otherwise subsequently attaching creditors and bail might be injured ; but if it had been shown, in that case, that no new demand had been admitted by the referees, then the subsequent attaching creditors could not have been injured, and the reason of the decision would have failed, and the plaintiff would have been allowed, in that case, to show that no new demand had been proved before the referees, nor allowed by them." This latter view is confirmed by note (2) of the reporter, appended to the report of the case of *Willis* v. *Crooker*, before cited, where it is said that the burden of proof lay on the plaintiff to show that nothing was added to the amount of the judgment in consequence of adding the new counts.

The cause having come up a second time for considera-tion, the court said " that they were satisfied with the cor-rectness of their former opinion; that it was intimated by the defendant's counsel, at the former argument, that some-thing had been added to the amount of the judgment, in consequence of filing the new counts; but that whether the fact appeared or not was immaterial, as the burden of proof lay on the other party." We regard the doctrine laid down in the case of *Seely* v. *Brown,* and the reporter's note above referred to, as being in strict accordance with the principles of the well settled decisions upon this subject, and as carry-ing them out only to their legitimate results. The ground upon which bail is discharged, or an attachment is dissolved, as against a subsequent attaching creditor, by reason of any alteration or amendment of the process, is the injury result-ing to the vested rights of such parties. And it is but just that when an amendment is made, the burden of proof should be thrown upon the party making it, to show that no such injury has resulted from it. And it is equally just and reasonable that, after final judgment, the plaintiff should be allowed to show that the judgment embraces nothing more and no greater amount than he was entitled to recover against the defendant, at the time of the service of the pro-cess, and with the aid of such amendments as by law he was entitled to make.

A proper application of these principles will determine whether the amendments made in the present case dissolved the attachment made in the service of the plaintiff's writ. In the place and stead of the original second count, which was a count for money had and received, for $700, was sub-stituted a count for $1500, for money had and received. This general count for $700 was designed, originally, to cover all the claims of Lord against Kinnear, which were of a character proper to be given in evidence, under such a count. These claims, it is to be inferred from the case, were found to be of a greater amount than $700, and for that

cause the amendment was made. This general mode of declaring is so generally in use, and has been for such length of time recognized as legitimate in practice, that it is now quite too late to take exception to it. And it is the right of the plaintiff to give in evidence, under the various general counts, all such claims as he may possess at the time, which are proper, and which were intended to be embraced therein, to the extent of the claim made by the counts. And all receipters and bail must be understood as assuming responsibilities with reference to this state of the law, and the rights of subsequent attaching creditors must be subject to this right of prior attaching creditor. It appears, in the present case, that it was the design of Lord to embrace under the counts in his declaration the whole amount of Kinnear's indebtedness to him at the date of the suit, but by mistake he failed to declare for enough. Lord finally took judgment for an amount less than the whole amount originally claimed in the declaration. And it appears manifest that he did not take judgment for any more or other demands than were originally embraced by his declaration. The simple fact of the making of the amendments, then, would not defeat the plaintiff's right to the goods attached, according to the doctrine of the cases cited. But we understand the petitioner's complaint to go further, and to allege that Lord caused a judgment to be entered up in his favor, for a larger amount than the whole sum embraced originally in his declaration, and that he afterwards fraudulently and unjustifiably altered the judgment by reducing it to a smaller sum. That a memorandum was made upon the back of the writ, of an amount of debt for which the plaintiff purposed taking judgment, is quite probable, as well as that a like memorandum was entered upon the waste docket of the term at which the action was entered, and the judgment was finally taken. Execution was also issued, embracing a like amount of debt, and the same was placed in the hands of the officer who served the writ, for the purpose of being levied and

satisfied out of the property attached. The officer, however, refused to levy the execution, for the reason that it required him to levy to a greater amount than the sum he was ordered in the original writ to attach, to secure the amount sought to be recovered thereon. The attorney of the petitioner also directed the officer to forbear levying the execution of *Lord* v. *Kinnear* on the property attached, and agreed that Laighton should indemify him for so doing, and placed in his hands the execution of *Laighton* v. *Kinnear*. While this state of things existed, the clerk of the court who had issued the execution of *Lord* v. *Kinnear*, wrote the attorney of Lord, informing him that the execution then in the hands of the officer, in favor of Lord, had issued improvidently, and directing its return; and informing him that Lord could not have judgment for more than the *ad damnum* in his writ. And the writ shows the *ad damnum* never to have been altered or amended, in point of fact.

In this state of the case, the execution was taken from Towle, the officer, and returned to the clerk, and the clerk thereupon made out and issued an execution for a sum corresponding with the amount of damages and costs for which judgment was finally entered. It is to be remembered, also, that the action of *Lord* v. *Kinnear* was not answered to, but was defaulted. In that state of the case, the plaintiff was not obliged to enter up a judgment for any sum beyond what it was fit and proper, and for his interest to do. In short, he had a right to pursue such a course, in taking judgment, as was found to be in conformity, and consistent with, and not detrimental to the rights of the defendant; and notwithstanding the mere fact of the amendment made, enlarging his right to a judgment as against the defendant in the action, he was, nevertheless, in no wise bound to take judgment for a larger sum than he was originally entitled to, as against the defendant in the action; and, we think, not as against the petitioner and subsequent attaching creditors. Under the amendment, he might or might not take a larger

judgment, as against the defendant; and, as against him or
the petitioner, he was not compelled so to do, by reason of
the amendments alone. If in a defaulted action a party
through accident, or mistake, or some misapprehension as to
his rights, may have filed his papers and obtained a judg-
ment, and at any time before the attachment may be dis-
solved by lapse of time, may have discovered the error, we
are of the opinion that the same may be corrected in con-
formity with his rights, and the justice of the case, and
judgment be entered accordingly. The matter is in the
hands of the plaintiff, and so long as he does no injustice to
the defendant, and nothing inconsistent with his rights, he
may direct its disposition. He is not to be compelled to
jeopardize his entire rights by an omission to correct a man-
ifest error with reference to the amount of the judgment en-
tered through mistake or misapprehension, in a case where
no one is injured by such correction. No judgment debtor,
who has been defaulted, could properly complain that a
judgment once entered up for too large a sum, upon which
execution had been issued, but not satisfied, should be re-
duced to the sum for which the plaintiff was entitled to
judgment, and the entry thereof corrected accordingly, and
a new execution issued thereon. No court would regard
such an alteration of the record as being of a character to
require its interposition, for the purpose of its correction, by
an order for an amendment enlarging the sum to the amount
of the judgment, as it was originally erroneously entered.
Nor is the claim of a subsequent attaching creditor for a
similar amendment or alteration founded in any greater
equity, or of a higher character than when made by the
debtor himself.

Upon the facts of this case, we are of the opinion that
the alteration of the record was entirely proper, and justi-
fied by the circumstances attending it. Here is no evidence
that warrants the conclusion that the record as originally

made up, so far as the same was done, was accompanied with any intent, on the part of Lord, to defraud Laighton.

All the papers that were filed in the case, were placed in the hands of the counsel for Laighton, for his and his client's inspection and approval, and as no objection was stated on the return of the papers, but the counsel of Lord was told he might take out his execution, it might well be inferred that no objection was discovered, or none was intended to be insisted upon. And when we consider that afterwards, when it was found that Laighton did object to the enlargement of Lord's claim, by way of the amendment made, the only alternative left for Lord was to restore his claim to its original amount, and take judgment and issue execution therefor, or jeopardize his entire debt, we think the course pursued by him was justifiable. It is entirely probable, that if the objection had been made upon the return of the papers to Lord's counsel, which was finally stated to the officer, that the judgment would have been entered originally for the sum only to which he had a right, as against Laighton. And we are fully of the opinion that neither justice, law, nor the strict rights of the parties require that we should hold him forever barred of the right to enter up a judgment for that sum, by the mere fact that a judgment had been entered up for too large a sum, under the circumstances of this case. And if, as we think, the judgment was properly entered finally, according to the strict right of Lord, it is plain that there would be no propriety in an order of the court of common pleas directing such an amendment of the record as the petitioner desires.

In this view of the case, we need not determine a question which might otherwise very properly be considered, namely; whether the common pleas can be properly called upon to correct the record of a judgment between Lord and Kinnear, upon a petition to which Kinnear is in no wise made a party, and that, too, where, as between the parties litigant, it may well be questioned whether the judgment

may not be impeached, collaterally, and every objection taken to it, of which the proper evidence might show the existence.

We are all clearly of the opinion that the prayer of the petition in this case must be denied, and the

*Petition be dismissed.*